## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 49206

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 15, 2022 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| SEAN WILLIS MCPHERSON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction and sentence for domestic battery with traumatic injury, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Sean Willis McPherson appeals from his judgment of conviction and sentence for domestic battery with traumatic injury. McPherson alleges the district court erred in excluding evidence of the victim's probationary status and this error was not harmless. McPherson additionally alleges the district court abused its discretion by imposing an excessive sentence. Because any evidentiary error was harmless and the sentence was not an abuse of discretion, the district court did not err. The judgment of conviction and sentence are affirmed.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

The State charged McPherson with felony domestic battery with traumatic injury, Idaho Code §§ 18-903, 18-918(2). Prior to trial, the State filed a motion in limine to exclude, in part, evidence that the victim was on misdemeanor probation at the time of the altercation between

1

McPherson and the victim. McPherson opposed the motion. McPherson alleged the victim did not want to admit to the police that she actually sustained the injuries at issue by falling after drinking because drinking would have violated the terms of her probation. Accordingly, McPherson argued the victim's probationary status gave her motive to lie and, as such, was important to McPherson's theory of defense.

The district court held a hearing on the State's motion. The district court found the victim's probationary status was not relevant and accordingly granted the State's motion as it related to the victim's probationary status. The case proceeded to a jury trial. Multiple individuals testified, including McPherson, the investigating officer, the victim, and an independent third-party witness. The victim testified that during a verbal altercation, McPherson threw her to the ground, causing her to strike her head upon the concrete and sustain injuries. This testimony was virtually identical to the testimony presented by the third-party witness.

While no evidence was presented concerning the victim's probationary status during trial, in its closing argument, the State discussed the credibility of various witnesses, including the victim, and argued that when the jury weighed the victim's credibility, it should consider that the victim did not have any motive to be untruthful. The jury found McPherson guilty of felony domestic battery with traumatic injury. The district court imposed a unified sentence of ten years, with five years determinate, and retained jurisdiction. McPherson timely appeals.

## II.

## ANALYSIS

McPherson alleges the district court erred in excluding evidence of the victim's probationary status from trial and this error was not harmless. Additionally, McPherson argues the district court abused its discretion by imposing an excessive sentence. In response, the State asserts the district court did not err in excluding the evidence of the victim's probationary status and, alternatively, that any error was harmless. The State also contends that McPherson's sentence was not an abuse of discretion.

### A. Any Evidentiary Error Was Harmless

McPherson alleges the district court erred in excluding evidence of the victim's probationary status and this error was not harmless. Specifically, McPherson reasons that evidentiary error cannot be harmless when the evidence was relevant to the defendant's theory of

2

the case and the State capitalized on the erroneous exclusion of evidence to prove its case, as McPherson argues the State did in its closing argument.[1]

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

In this case, any alleged error of excluding evidence was minimal compared to the probative force of the trial record establishing McPherson's guilt beyond a reasonable doubt. Regarding potential relevance, as to McPherson's claim that the victim's probationary status explained her reluctance to speak to law enforcement, the fact is the victim ultimately spoke to law enforcement. Her initial reluctance, even if based on her probationary status, does little or nothing to make the allegation she fell rather than being pushed more or less likely. As to the victim's credibility about being pushed, her probationary status, assuming a prohibition on drinking, might

---

[1] Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). McPherson did not object in the district court to the prosecutor's statement during closing argument nor does he challenge the prosecutor's comment in the context of a fundamental error analysis on appeal. Thus, we further decline to address any issue arising from this comment.

have given her a reason to lie about drinking but it would do little, if anything, to establish a motive to lie about being pushed. There is no evidence she lied about drinking and the officers were aware that she had been drinking.

We note that in his appellant's brief, McPherson fails to make any reference to the fact that there was an independent, third-party witness who saw the entire physical altercation between McPherson and the victim. This omission leaves the false impression that the only two witnesses to the event were McPherson and the victim, thus making the victim's credibility and the attendant motive for her testimony more probative in establishing McPherson's guilt than it actually was. In fact, the victim's testimony was corroborated by the third-party witness and a phone call McPherson contemporaneously made to dispatch during the battery; thus, the victim's credibility was less important than McPherson would imply when viewed in the context of the full record.

The victim testified that on the night in question she was in a relationship with McPherson and they were living together in a recreational vehicle in a parking lot by a local restaurant and hotel. The victim explained that earlier in the evening she drank a few glasses of wine and argued with McPherson about, among additional things, her drinking. The victim recalled that at some point, McPherson took her phone and refused to give it back so she grabbed McPherson's keys and told him she would return them if he gave back her phone. The victim testified that as she tried to reach for her phone, McPherson pushed her, causing her to fall backwards and strike her head on the ground. The victim explained McPherson was over twice her size, pushed her forcefully, and caused her to hit her head so hard on the pavement that she thought she momentarily "blacked out." She testified that after her head hit the pavement, she was dizzy, in shock, and felt as if her "head had been split open." The victim testified that she immediately ran and looked for help, but remembered very little of the events after she hit her head. Although the victim explained that she did not seek medical care at first, she later went to the emergency room to ensure she did not have internal bleeding after she remained dizzy and in pain for a couple of days.

The third-party witness testified to observing the physical altercation, and her testimony supported the victim's description of events. The third-party witness stated that she was traveling through Idaho on the evening of the altercation. She arrived at the hotel around 8:30-9:00 p.m. and was unloading her car in the parking lot when she heard a man and a woman yelling behind her. The third-party witness turned around and saw McPherson and the victim standing about forty feet away from her, yelling about a phone and set of keys; she explained that McPherson

4

appeared angry and the victim looked scared. At first, the third-party witness said McPherson and the victim were just arguing, but things turned physical when the victim tried to grab for her phone and McPherson pushed her hand away. The witness testified that the victim tried to back away but McPherson grabbed her arm and threw her onto the ground with "pretty hard" force. As the argument escalated, the third-party witness moved about five feet closer to the couple and the witness could tell McPherson pushed the victim to the ground, rather than the victim tripping and falling.

The third-party witness testified that after McPherson pushed the victim, he leaned over the victim's body and punched her "pretty hard" in the chest area three or four times. The third-party witness believed McPherson was getting ready to kick the victim so the third-party witness yelled at McPherson to stop. When she yelled, McPherson turned to look at her and the victim got up and ran. The third-party witness recalled that the victim looked "terrified," was crying, and was holding the back of her head while McPherson continued to yell at the victim and followed her into the hotel. The third-party witness explained that she returned to her hotel room, told her family what she witnessed, and was on her way to the front desk of the hotel to tell the hotel staff when she ran into police officers and told them what she observed.

Officer Hutchison testified he responded to a call for service regarding a domestic dispute in a hotel parking lot and that McPherson had called in the report. Officer Hutchison stated he responded to the parking lot around 9:00 p.m., made contact with McPherson, and eventually spoke to the victim. Officer Hutchison testified the victim was crying and clearly scared. Officer Hutchison stated that while he could tell the victim had drank some alcohol, she was not impaired. Officer Hutchison testified he inspected the victim's head for injuries and felt a sizeable lump, close to three inches in diameter, directly on the back of her head and the injury was consistent with striking concrete or asphalt. He explained the injury was very fresh, very swollen, and gave him concern that the victim may have sustained an injury that would have a major, long-term impact on her health.

During trial, the State admitted an audio recording of the service call that McPherson made to dispatch the evening of the altercation. On the recording, a male voice told dispatch that the victim had taken his keys and he demanded that dispatch send officers right away or he was "going to kick her ass for taking my shit." A female voice responded: "You already did, you threw me on the--" at which point the call ended. McPherson testified that he made the call to dispatch after

5

the victim had fallen on the ground, it was his voice on the recording, and it was the victim's voice at the end of the call. The victim similarly testified that the male voice on the recording was McPherson's, the female voice was hers, and the call included the period of time when McPherson threw her to the ground.

Taken together, the probative force of the record corroborates the victim's description of events regardless of any motivation the victim may have had for her testimony. Any error in the exclusion of evidence of the victim's probationary status was minimal compared to the probative force of the record establishing McPherson's guilt beyond a reasonable doubt. Accordingly, any evidentiary error concerning exclusion of the victim's probationary status was harmless.

**B.      McPherson's Sentence Was Not an Abuse of Discretion**

McPherson alleges that, given his mental health history, demonstrated remorse, acceptance of responsibility, and support from family and friends, the district court's sentence of ten years, with five years determinate, was excessive under any view of the facts. The district court did not abuse its discretion.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).

6

In contrast to McPherson's assertions, a review of the sentencing transcript shows that the district court considered McPherson's mental health history, expressed remorse, acceptance of responsibility, and support from friends and family when it imposed its sentence. The district court listened to McPherson's attorney explain that McPherson has been diagnosed with depression, anxiety, ADHD, and borderline personality disorder.[2] The district court asked questions about the borderline personality disorder diagnosis, which McPherson's attorney answered. Subsequently, the district court recognized McPherson's mental health concerns and asked that the Department of Correction provide McPherson with cognitive restructuring, aggression replacement therapy, an additional mental health assessment, and any treatment that the assessment recommends. The district court acknowledged that McPherson had expressed some remorse and responsibility for his actions and stated that it considered the letters from McPherson's friends and family.

The district court explained that its decision to impose a unified sentence of ten years, with five years determinate, and retain jurisdiction was based on McPherson's extensive criminal history and his failure to accept full responsibility for his actions underlying the conviction. The district court read McPherson's criminal history, which included at least sixteen charges, including probation violations, over nearly thirty years. The district court noted concern that the crimes McPherson committed endangered or negatively affected the public and demonstrated a disregard for the law. Nonetheless, the district court stated it hoped McPherson could show it would be appropriate for the court to grant him probation through successful behavior during his period of retained jurisdiction. Accordingly, the district court considered the mitigating factors which McPherson raised on appeal, but concluded the sentence imposed was appropriate given the applicable sentencing considerations and totality of the circumstances before the court; this was not an abuse of discretion.

---

[2] While McPherson's attorney argued for a period of retained jurisdiction, he did not argue for a specific underlying sentence.

## III.

### CONCLUSION

Any evidentiary error concerning exclusion of the victim's probationary status was harmless and McPherson's sentence was not an abuse of discretion. Accordingly, the district court did not err, and the judgment of conviction and sentence are affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.